CV IQA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MICHELE EVANS | : | CIVIL ACTION |
| --- | --- | --- |
| *Plaintiff* | : | |
| | : | NO. 16-1897 |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                MARCH 28, 2018

## MEMORANDUM OPINION

### INTRODUCTION

This matter is an employment action based on allegations of race, gender, and disability discrimination, brought by Plaintiff Michele Evans ("Plaintiff"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112 *et seq.*, against the City of Philadelphia, ("Defendant"). Before this Court are Defendant's motion for summary judgment filed pursuant to Federal Rule of Civil Procedure ("Rule") 56, [ECF 17], and Plaintiff's response in opposition thereto and cross-motion for leave to file a second amended complaint. [ECF 19].[1] The issues presented in the motion for summary judgment and in the cross-motion to amend have been fully briefed by the parties and are ripe for disposition. For the reasons stated herein, Defendant's motion for summary judgment is granted, and Plaintiff's cross-motion for leave to file a second amended complaint is denied.

---

[1] In adjudicating Defendant's motion for summary judgment, this Court also reviewed and considered Defendant's reply, [ECF 22]; Plaintiff's sur-reply, [ECF 23]; the exhibits accompanying Defendant's motion, [ECF 17-1-9], which include Defendant's Statement of Undisputed Material Facts, [ECF 17-1]; the exhibits accompanying Plaintiff's response and cross-motion, [ECF 19-1-6, 20]; and Plaintiff's response to Defendant's Statement of Undisputed Facts, [ECF 21].

## BACKGROUND

On August 10, 2016, Plaintiff, represented by counsel, filed the operative complaint (the "amended complaint") against Defendant and essentially averred that the Philadelphia Police Department, an agency of Defendant, discriminated against her in violation of Title VII and the ADA over the course of her career. Specifically, Plaintiff alleges that Defendant discriminated against her by denying her requests to transfer to other police districts, suspending her, and later terminating her employment after she tested positive in a random drug test. [ECF 5].[2] The primary focus of Plaintiff's discrimination claims is her suspension and the subsequent termination of her employment.

Discovery ensued and was completed. On May 15, 2017, Defendant filed the instant motion for summary judgment and a Statement of Undisputed Material Facts. [ECF 17, 17-1]. In her response, Plaintiff briefly addresses the requirements for a motion for summary judgment before devoting the remainder of the memorandum to her cross-motion for leave to file a second amended complaint. [ECF 19]. Plaintiff also filed a response to Defendant's Statement of Undisputed Facts, in which she admits to facts identified in the first ten paragraphs of Defendant's Statement of Undisputed Facts but disputes the remaining facts set forth therein. [ECF 21].

In ruling on Defendant's motion for summary judgment, this Court will consider the evidence presented in a light most favorable to the non-moving party, *i.e.*, Plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The facts relevant to the

---

[2] Plaintiff filed the original complaint in this case on April 21, 2016, [ECF 1], but later amended it to add factual allegations related to the exhaustion of her administrative remedies. (*See* Am. Compl. at ¶¶ 36-37).

2

disposition of Defendant's motion for summary judgment are summarized as follows:[3]

> Plaintiff is an African American female who was employed by the Philadelphia Police Department (the "PPD") as a police officer from 1996 until September 5, 2013, when her employment was terminated. (SOF at ¶¶ 1, 16). Plaintiff's initial assignment was with the 16th District. In 2003, Plaintiff filed a sexual harassment charge against her then-supervisory sergeant, and was reassigned to the 35th District. (Pltf. Dep. 19:18-20:19). During her career, Plaintiff was transferred several times. At her deposition, Plaintiff testified that she was subjected to harassing conduct by colleagues and supervisors at each assigned district. (*Id.* 24:5-28:2).
>
> In March 2010, Plaintiff transferred to the 3rd District from the 4th District. (SOF at ¶ 5). Plaintiff alleges that, during her tenure at the 3rd District, she requested a transfer on three separate occasions, and that each transfer request was denied. (*Id.* at ¶ 6).
>
> Sometime in 2010, Plaintiff suffered a work-related injury. In 2012 and 2013, Plaintiff was placed on restricted duty and assigned to the Differential Police Reports ("DPR") unit while receiving treatment for a number of physical injuries and ailments sustained both on and off duty, which included a wrist injury and migraine headaches. (*Id.* at ¶ 7).
>
> On July 18, 2013, Plaintiff and approximately 220 other police officers were required to submit to a random drug test pursuant to PPD Directive 55 ("Directive 55"). (*Id.* ¶ 10). Directive 55 provides, *inter alia*, that "all sworn personnel," including PPD officers, are subject to random drug testing, either by urinalysis and/or hair testing, (*see* Directive 55 [ECF 17-2] at § II.C, II.E), and that a positive result will result in dismissal. (*See id.* at § IX.A.1). A positive result is defined, *in part*, as "a finding that indicates the presence of illegal drugs." (*Id.* at § III.D). Police officers who test positive for drugs have the option of requesting and submitting to a second drug test (a "reconfirmation test"). (*Id.* at § XI.A.).[4]

---

[3] Most of these facts, where undisputed and/or admitted by Plaintiff, are taken from Defendant's *Statement of Undisputed Facts,* [ECF 17-1], ("SOF"), and portions of Plaintiff's deposition, [ECF 17-5]. To the extent facts are disputed, such disputes are noted and, if material, construed in Plaintiff's favor.

[4] The directive, however, is silent as to what impact, if any, a negative reconfirmation test finding will have on an officer's discipline and/or dismissal. (*See* Directive 55).

3

On August 1, 2013, the PPD's Internal Affairs Unit received a notification that Plaintiff's hair sample had tested positive for cocaine. (SOF ¶ 11). Plaintiff's supervisor informed Plaintiff of the test results on the same day and immediately placed her on thirty-day suspension with intent to dismiss. (*See* Pltf. Dep. 54:19- 56:13).

Plaintiff requested, and on August 5, 2013, submitted to a reconfirmation test. (SOF ¶ 14). The reconfirmation test result was negative for cocaine. (*Id.*). On September 5, 2013, Plaintiff's employment was terminated. (*Id.* ¶ 16). Plaintiff received notice of her termination on September 6, 2013. (*Id.*).

On June 2, 2014, Plaintiff filed a charge with the Equal Employment Opportunity Commission, ("EEOC"), alleging discrimination and retaliatory termination on the basis of her race, gender, and/or disability. (*Id.* ¶ 20). Plaintiff also filed a charge with the Philadelphia Commission on Human Relations ("PCHR"). (*Id.*).

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 56 governs the summary judgment motion practice. Fed. R. Civ. P. 56. Specifically, this rule provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Under Rule 56, the court must view the evidence in the light most favorable to the non-moving party. *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011).

Rule 56(c) provides that the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record which the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

4

317, 323 (1986). This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322.

After the moving party has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." *See* Rule 56(c)(1)(A-B). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on bare assertions, conclusory allegations or suspicions, *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings. *Celotex*, 477 U.S. at 324. Rather, the nonmoving party must "go beyond the pleadings" and either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

## DISCUSSION

In the operative amended complaint, Plaintiff asserts claims of disability discrimination in violation of the ADA (Count I); race discrimination and disparate treatment in violation of Title VII (Count II); and gender discrimination and disparate treatment in violation of Title VII (Count III). Defendant has moved for summary judgment on all claims asserted in the amended complaint on the grounds that (1) many of Plaintiff's claims are time-barred, and (2) for the claims which are not time-barred, Plaintiff has not, and cannot establish a *prima facie* case of

discrimination. In her response, Plaintiff primarily argues for leave to file a second amended complaint pursuant to Rule 15(a). These motions will be separately addressed.

## I.   *Defendant's Motion for Summary Judgment*

At Count I of the amended complaint, Plaintiff avers claims of discrimination based on her disability and disparate treatment pursuant to the ADA,[5] which resulted in the termination of her employment. Defendant moves for summary judgment on this claim by arguing (1) that Plaintiff has not established a *prima facie* case of discrimination under the ADA, and (2) that even if she has established a *prima facie* case, Plaintiff has not produced any evidence from which a reasonable fact finder could conclude that the reason proffered by Defendant was a pretext for discrimination.

When there is no direct evidence of discrimination, this Court analyzes ADA disparate treatment claims under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000); *Parker v. Verizon Pa. Inc.*, 309 F. App'x 551, 555 (3d Cir. 2009). Under this framework, a plaintiff has the burden to first establish a *prima facie* case of discrimination by a preponderance of the evidence. *See Shaner*, 204 F.3d at 500 (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999)). Once a plaintiff meets this burden of proof, the burden of production then shifts to the defendant "to articulate some legitimate nondiscriminatory reason" for the challenged employment action. *Shaner*, 204 F.3d at 500. If the defendant meets this burden, the

---

[5]   The ADA provides, in relevant part, that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . [the] discharge of employees . . . ." *Tirk v. Dubrook*, 673 F. App'x 238, 240-41 (3d Cir. 2016) (quoting 42 U.S.C. § 12112(a)). A "qualified individual" is defined as a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12102(2).

plaintiff must then prove, by a preponderance of the evidence, that the legitimate reason(s) offered by the defendant are merely a pretext for discrimination. *See id.*

To establish a *prima facie* case of discrimination under the ADA, "a plaintiff must show (1) that [she] is disabled within the meaning of the ADA, (2) that [she] is otherwise qualified for the job, with or without reasonable accommodations, and (3) that [she] was subjected to an adverse employment decision as a result of discrimination." *Sulima v. Tobyhanna Army Depot,* 602 F.3d 177, 185 (3d Cir. 2010).

Applying this framework to the present case and for this motion, Defendant concedes that Plaintiff has produced enough evidence to satisfy the first two elements of a *prima facie* case; *to wit*: that she is disabled and is otherwise qualified to perform the essential duties of the job. Defendant, however, disputes that Plaintiff has established a causal nexus between her disability and the alleged adverse employment actions. This Court agrees.

From the amended complaint, it appears that Plaintiff alleges that she suffers from at least one qualifying disability, *namely,* migraine headaches, (Am. Compl. ¶ 15), and that because of this disability, she suffered adverse employment actions, including, *inter alia,* the denial of several transfer requests made during the period of 2010 and 2012, her suspension following a positive drug test result in 2013, and her termination. (*See id.* ¶ 9, 45). Plaintiff, however, has pointed to no evidence of record that would demonstrate a causal connection between any of the complained-of actions and her disability.

In summary judgment determinations, a district court is not required to undertake an independent search of the record, but need only consider "cited materials." *See* Rule 56(c)(3). Specifically, Rule 56 requires a plaintiff who contends that a fact is genuinely disputed to support the assertion by "citing to *particular* parts of materials in the record, including

depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A) (emphasis added). Here, Plaintiff has undertaken very little, if any, effort to cite to "particular parts of materials in the record," to establish a causal nexus between any of the complained-of employment actions and her disability. Instead, Plaintiff merely relies on the allegations in her amended complaint to establish the elements of a *prima facie* case of disability discrimination. Accordingly, this Court finds that Plaintiff has failed to establish the third prong of her *prima facie* claim of disability discrimination; *to wit*: she has failed to present any evidence that she was subjected to adverse employment actions because of her alleged disability.

In addition, Plaintiff has failed to demonstrate that there is a genuine dispute of material fact as to whether Defendant's proffered legitimate, non-discriminatory reasons for denying her transfer requests and/or terminating her employment were pretextual for discrimination based on her disability. Defendant has offered a legitimate, non-discriminatory reason for the termination of Plaintiff's employment; *to wit*: by testing positive for cocaine, Plaintiff violated Directive 55, and was, therefore, subject to termination.

Having offered a non-discriminatory reason for her termination, the burden shifts to Plaintiff to submit evidence that Defendant's proffered reasons are pretextual. *See Fuentes v. Perskie*, 32 F.3d 759, 804-05 (3d Cir. 1994). To overcome Defendant's stated reasons for her termination, Plaintiff must present evidence that could lead a reasonable fact finder to either (1) disbelieve Defendant's articulated legitimate reasons for not transferring and/or reinstating Plaintiff or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause for Defendant's actions. *Fuentes*, 32 F.3d at 764. In her

8

response, Plaintiff presents no argument or evidence suggesting that Defendant's proffered reasons for any of the alleged adverse employment actions taken against her were mere pretext for disability discrimination. Rather, as noted, Plaintiff devotes her response to argue that this Court should grant her leave to amend her complaint for a second time to assert a new theory of liability. This Court finds that Plaintiff has failed to carry her burden of production under the *McDonnell Douglas* framework. Accordingly, Defendant's motion for summary judgment as to Count I of the amended complaint is granted.

At Counts II and III of the amended complaint, Plaintiff asserts claims of disparate treatment based on race and gender discrimination under Title VII that are predicated on the same conduct and circumstances that form the basis of her ADA claim; *i.e.*, the disparate treatment to which she was subjected while assigned to the DPR, the 2013 drug test, and the resultant suspension and termination of her employment.[6] Defendant moves for summary judgment on the basis that (1) these claims are time-barred to the extent that the claims are based on conduct that occurred before August 5, 2013, and (2) for those not time-barred, Plaintiff has not established a *prima facie* case of discrimination. This Court agrees.

Specifically, Defendant contends that some of Plaintiff's alleged discriminatory conduct occurred more than 300 days prior to June 2, 2014, the date Plaintiff filed her EEOC charge. Pursuant to provisions of Title VII, before filing a discrimination action in court, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e–5(e)(1); *Mikula v. Allegheny Cnty. of Pa.*, 585 F.3d 181, 183 (3d Cir. 2009). This statute of limitation requirement applies to each discrete

---

[6] Title VII of the 1964 Civil Rights Act makes it unlawful for an employer to "discharge any individual, or otherwise . . . discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex." 42 U.S.C. § 2000e-2(a)(1).

employment action claimed, such as Plaintiff's claims of discrimination resulting in the denial of a transfer request, suspension or termination. The accrual period for the statute of limitations on each claim commences at the time or when the event (the denial of transfers, suspension, or removal) occurs. *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113-114 (2002) (holding that the administrative clock starts to run for discrete employment actions like "termination, failure to promote, denial of transfer, and refusal to hire" at the time each employment decision occurs). If a particular charge is not timely filed, the action is considered time-barred, and the plaintiff cannot recover under Title VII. *See Noel v. The Boeing Co.,* 622 F.3d 266, 270 (3d Cir. 2010).

Plaintiff filed her EEOC charge on June 2, 2014. Thus, any claims that are predicated on adverse employment actions that occurred on or before August 5, 2013, are time-barred. From the amended complaint, it is apparent that all of the adverse employment actions Plaintiff complained of, with the exception of her termination, occurred before August 5, 2013. Therefore, this Court finds that to the extent that Plaintiff's Title VII claims are predicated on employment actions that occurred before August 5, 2013, these claims are time-barred as a matter of law. Consequently, those claims are dismissed.

Defendant further argues that to the extent that Plaintiff's race and gender discrimination claims are based upon discrete employment actions that occurred on or after August 5, 2013, *i.e.*, the suspension and termination of her employment, Defendant is, nonetheless, entitled to summary judgment on Counts II and III because Plaintiff has not established a *prima facie* case of race or gender discrimination. This Court agrees.

Plaintiff's race and gender discrimination claims rely solely on circumstantial evidence and, therefore, the *McDonnell Douglas* framework also applies to these Title VII claims. *See*

*Beauburn v. Thomas Jefferson Univ.*, 578 F. Supp. 2d 777, 781 (E.D. Pa. 2008). To establish a *prima facie* case of gender or race discrimination under Title VII, a plaintiff must show that (1) she was a member of a protected class, (2) she was qualified for the former position, (3) she suffered an adverse employment action, and (4) similarly situated non-members of the protected class were treated more favorably than the plaintiff, or that the circumstances of the adverse employment action give rise to an inference of race and/or gender discrimination. *See Johnson v. Del. Cnty. Juvenile Detention Ctr.*, 2012 WL 895507, at *4 (E.D. Pa. Mar. 16, 2012) (citing *Warfield v. SEPTA*, 2012 WL 363062, at *2 (3d Cir. 2012)).

For the purposes of this motion *only*, Defendant concedes that Plaintiff can establish the first three prongs for a *prima facie* case of race and gender discrimination. Defendant argues, however, that it is entitled to summary judgment on Counts II and III because Plaintiff has not established the fourth element of a *prima facie* case of discrimination under Title VII, *i.e.*, she has not presented any evidence from which a jury could infer that Defendant terminated Plaintiff because of her race and/or gender or that other similarly situated individuals were treated more favorably than Plaintiff.

Specifically, the fourth prong of the Title VII *prima facie* case requires a plaintiff to demonstrate that the circumstances of the adverse employment action at issue give rise to an inference of discrimination. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999). In order to establish this prong, a plaintiff may either: "(1) introduce evidence that similarly situated comparators were treated more favorably under similar circumstances; or (2) rely on circumstantial evidence to show a causal nexus between her membership in a protected class and the adverse employment action." *Greene v. V.I. Water & Power Auth.*, 2014 WL 523363, at *4 (3d Cir. Feb. 11, 2014).

When relying on comparator evidence to establish this prong, "[i]t is the plaintiff's burden to put forth evidence that potential comparators are indeed similarly situated, and the plaintiff's own unsupported statements regarding the comparators' circumstances will not suffice." *George v. Lehigh Valley Health Network (Muhlenberg Hosp.)*, 2014 WL 1464327, at *4 (E.D. Pa. Apr. 15, 2014).

Here, Plaintiff alleges that Defendant subjected her to harsher discipline than similarly situated Caucasian male and female police officers. Defendant argues that Plaintiff's comparator evidence consists of nothing more than a bald allegation that "no police officer to plaintiff's knowledge, particularly a Caucasian male or female police officer assigned to DPR after a reconfirmation drug test and then cleared for work, was ever terminated," (Am. Compl. ¶ 35). Defendant contends that this unsubstantiated assertion is insufficient to defeat the motion for summary judgment. (Def.'s Mem. at p. 8). In her response, Plaintiff does not cite to any evidence of record that could support an inference that she was subjected to harsher discipline than similarly situated Caucasian and/or male police officers who tested positive for drug use. The allegations in the amended complaint are not enough to defeat summary judgment or defeat Defendant's assertion of having a no-tolerance policy for the use of illegal drugs. Plaintiff must present affirmative evidence that race and/or gender was a determining factor in Defendant's decision to terminate her employment, but has failed in her burden. *See Anderson v. Liberty Lobby, Inc.*, 477 at 248. Under these circumstances, Plaintiff has not met her burden under *McDonnell Douglas* of establishing a *prima facie* case of race and/or gender discrimination in violation of Title VII.

Even assuming that Plaintiff has satisfied her burden of establishing a *prima facie* case of gender and/or race discrimination, which she has not, Defendant is still entitled to summary

judgment on Plaintiff's Title VII claims because Plaintiff has not shown that the articulated reasons for her discharge were pretextual in nature. *See, e.g., Sosa v. Napolitano*, 318 F. App'x 68, (3d Cir. 2009) (affirming entry of summary judgment for defendant where plaintiff "submitted no evidence that [the defendant's] proffered reason for her termination was pretextual"). As noted, Plaintiff has not presented any evidence to rebut Defendant's arguments or Defendant's proffered non-discriminatory reason for her termination. Accordingly, Defendant's motion for summary judgment with respect to Counts II and III of the amended complaint is granted.

## *II.    Plaintiff's Cross-Motion to Amend*

In her cross-motion, Plaintiff seeks leave to file a second amended complaint to add an additional race discrimination claim based on a disparate impact theory of liability. (*See* Pltf. Second Am. Compl. [ECF 19-2] at ¶¶ 52-93). Defendant objects to Plaintiff's cross-motion to amend on the basis of the motion being untimely, prejudicial, futile, and a blatant attempt to evade summary judgment.

Rule 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The decision to grant or deny a motion to amend is committed to the sound discretion of the district court. *Gay v. Petsock*, 917 F.2d 768, 772 (3d Cir. 1990). A court has the discretion to deny a motion to amend if (1) the moving party has demonstrated undue delay, bad faith, or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the non-moving party. *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003).

Generally, "[d]elay alone is not sufficient to justify denial of leave to amend." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (citation omitted). However, "at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become

'prejudicial,' placing an unfair burden on the opposing party." *Adams v. Gould Inc.,* 739 F.3d 858, 868 (3d Cir. 1984); *see also Cureton v. Nat'l Collegiate Ath. Ass'n,* 252 F.3d 267, 273 (3d Cir. 2001). Thus, "the question of undue delay requires [a court to] focus on the movant's reason for not amending sooner." *Cureton,* 252 F.3d at 273.

Here, the timing of the motion—which was filed nearly four months after the close of discovery and nearly a month after Defendant moved for summary judgment—raises a strong inference of undue delay. As argument in support of her cross-motion, Plaintiff contends that she should be permitted to make the proposed amendments because she needed to review certain discovery, namely, statistical evidence produced by Defendant, before she could file the motion. Plaintiff contends that she has been diligent in seeking leave to amend her amended complaint and that the delay in so doing is attributable to Defendant's dilatory conduct in responding to Plaintiff's discovery requests.

After carefully considering the arguments made on this issue, this Court finds that Plaintiff has acted with undue delay in attempting to assert a new theory of recovery. Plaintiff offers no credible explanation as to why she waited nearly four months after the close of discovery to file the instant motion. Although Plaintiff filed a motion to compel Defendant to produce the information requested or to extend discovery, this motion was filed after the deadline for discovery and was, therefore, deemed untimely. As argued by Defendant, to allow Plaintiff to assert a new theory of liability based on a disparate impact theory, at this stage of litigation, given that discovery has closed and the dispositive motion deadline has passed, would be unduly prejudicial to Defendant. *See, e.g., Saini v. Bloomsburg Univ. Faculty,* 826 F. Supp. 882, 889 (M.D. Pa. 1993) (denying motion for leave to amend complaint to assert a new cause of action after the expiration of the dispositive motion deadline because it was, *inter alia,* unduly

14

prejudicial to the defendants and would require the court to "re-open discovery" and "re-open the period for filing dispositive motions").

In addition, this Court finds that Plaintiff's proposed amendment is futile. Generally, "[t]he futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion." *Synthes, Inc. v. Marotta,* 281 F.R.D. 217, 229 (E.D. Pa. 2012). However, when a party moves to amend the complaint after a motion for summary judgment is filed, courts in this Circuit have "imposed stringent standards before granting such motions." *Ali v. Intertek Testing Servs. Caleb Brett,* 332 F. Supp. 2d 827, 830 (D.V.I. 2004) (citing *Carey v. Beans,* 500 F. Supp. 580, 582 (E.D. Pa. 1980), *aff'd,* 659 F.2d 1065 (3d Cir. 1981)). Such a motion will not be granted unless "the party seeking amendment can show that the proposed amendment has 'substantial merit,'" *Ali,* 332 F. Supp. 2d at 830 (quoting *Verhein v. South Bend Lathe, Inc.,* 598 F.2d 1061, 1063 (7th Cir. 1979)), and that "substantial and convincing evidence supporting the newly asserted claim," exists. *Id.* (citations omitted); *see also Smith v. Effluent Retrieval Servs., Inc.,* 2016 WL 6135573, at *6 (E.D. Pa. 2016) (applying this standard when plaintiff moved to amend his complaint after defendant moved for summary judgment). To make such determination, courts look to the proposed amendment, any supporting evidence, and the degree of prejudice accruing to the defendant if the motion is granted. *Carey,* 500 F. Supp. 2d at 582. "This more demanding burden, which the party seeking amendment bears at this procedural juncture, evolves from the truism that 'prejudice to the non-moving party is the touchstone for denial of the amendment.'" *Carey,* 332 F. Supp. 2d at 283 (quoting *Cornell & Co., Inc. v. Occupational Safety and Health Review Comm'n,* 573 F.2d 820, 823 (3d Cir. 1978)).

As noted, Plaintiff seeks to amend the amended complaint to add a disparate impact race discrimination claim. To establish *a prima face* case under a disparate impact theory of liability,

a Title VII plaintiff must show "that the facially neutral employment practice [that is challenged] had a significantly discriminatory impact." *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 120 (3d Cir. 1983) (quoting *Connecticut v. Teal*, 457 U.S. 440, 446 (1982)). This *prima facie* showing requires the plaintiff to prove a significant statistical disparity and to "demonstrate that the disparity complain[ed] of is the result of one or more of the employment practices that [she is] attacking." *Newark Branch, NAACP v. City of Bayonne, N.J.*, 134 F.3d 113 (3d. Cir. 1998) (quoting *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 657 (1989)). Plaintiff's specific proposed disparate impact claim alleges that Defendant has a policy of disregarding the results of the reconfirmation tests when determining whether to terminate the employment of individuals who have tested positive for drug use, and that this facially-neutral policy has a statistically discriminatory impact. (*See* Pltf. Second Am. Compl. at ¶¶ 52-71). Plaintiff essentially contends that because the racial composition of officers dismissed from employment after failing a drug test and subsequently requesting a reconfirmation test differs from the racial composition of the PPD as a whole, she has met her *prima facie* burden. (*See* Pltf. Opp. Brf. [ECF 19] at 27-29) But Plaintiff misidentifies the relevant comparator pool. Because the identified policy— Defendant's decision to disregard the outcome of reconfirmation tests— affects only those who voluntarily request a reconfirmation test, the relevant statistical pool is comprised only of those officers who requested a reconfirmation test, not the entire police department. Plaintiff concedes that of the six officers that requested reconfirmation testing between 2010 and 2015, four were black and two were white, and all six were terminated regardless of the outcome of their reconfirmation tests. (*See* Pltf. Opp. Brf. at 28-29). Because Plaintiff has not demonstrated that there is a statistical disparity between the termination rates of those black officers who requested reconfirmation tests and those white officers who requested the same test, she has not established

16

a *prima facie* case of disparate impact discrimination. Accordingly, this Court concludes that because the proposed disparate impact claim lacks substantial merit and is not supported by "substantial and convincing evidence," Plaintiff's motion to amend her complaint is denied.

## CONCLUSION

Based upon the foregoing reasons, Defendant's motion for summary judgment is granted, and Plaintiff's cross-motion for leave to amend her amended complaint is denied. An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.